UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DAVID LOWE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15-CV-95 |
| ) | Judge Curtis L. Collier |
| MCMINN COUNTY *et al.*, ) | |
| ) | |
| Defendants. ) | |

### **M E M O R A N D U M**

Before the Court are motions to dismiss filed by the three remaining named defendants. Defendant Bobby Jones ("Jones") filed a motion to dismiss (Court File No. 12) and a motion for a protective order (Court File No. 16). Plaintiff David Lowe ("Plaintiff") filed a response to Jones's motion (Court File No. 21). Defendant McMinn County ("McMinn County") also filed a motion to dismiss (Court File No. 14), to which Plaintiff responded (Court File No. 21). Defendant City of Englewood also filed a motion to dismiss (Court File No. 32). Plaintiff did not respond to this motion. For the following reasons, the Court will **DENY** Jones's motion to dismiss and his motion for a protective order (Court File Nos. 12, 16) and will **GRANT** the motions to dismiss filed by McMinn County and the Town of Englewood (Court File Nos. 14, 32).

I.     **FACTUAL AND PROCEDURAL HISTORY**

On April 17, 2014, Bobby Jones and other unidentified law enforcement officers from the McMinn County Sheriff's Department and the Englewood Police Department arrived at Plaintiff's home to conduct an alleged "welfare check" of Plaintiff's spouse. Plaintiff

acknowledges that after the arrival of the officers, Plaintiff began to act "in an irrational manner" and "'began to move around the porch and talk about things that didn't relate' to what was happening in reality" (Court File No. 8, ¶ 7).

Plaintiff claims he complied with all of the instructions issued by the law enforcement personnel and did not resist the police officers. At some point, a group of law enforcement personnel physically brought the Plaintiff to the ground. Plaintiff alleges that he was tased repeatedly while on the ground. Plaintiff alleges that Jones grabbed him and that Jones was part of the group that brought him to the ground. Furthermore, Plaintiff alleges that he had not offered any resistance to being taken into custody. Plaintiff alleges he has suffered health problems as a result of the repeated tasings.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S.

2

662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Bobby Jones

To state a claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). It is undisputed that Jones and the other unidentified officers were acting under the color of state law. Plaintiff accuses Jones of violating his Fourth Amendment right to be free from the use of excessive force during arrest. Jones contends that claims against him must be dismissed because he is entitled to qualified immunity.

Qualified immunity protects government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to

3

have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective, reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson,* 185 F.3d 557, 567 (6th Circ. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

To determine if qualified immunity applies, the Court employs a two-part test. First, the Court determines whether the facts, taken in the light most favorable to the party alleging injury, show an officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, if a constitutional right was violated, the Court must determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro Gov't of Nashville and Davidson Cnty.,* 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted). This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *Saucier*, 533 U.S. at 201. If a plaintiff fails to establish either of the two prongs, then he has failed to carry the burden and judgment is appropriate for the defendant. Since a plaintiff's failure to establish either prong is dispositive in favor of a defendant, the Court may address either prong first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

The alleged violation here is excessive use of force in contravention of the Fourth Amendment. Excessive force claims are properly analyzed under an "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Whether or not a use of force is reasonable requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the

4

intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9). A plaintiff bears the burden of proving the force used was unjustified. *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). The reasonableness of an officer's actions is calculated with "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. The "20/20 vision of hindsight" is not the arbiter of reasonableness. *Id.* at 396.

Plaintiff alleges that Jones and several other law enforcement officers grabbed him, took him to the ground, and tased him repeatedly. Furthermore, Plaintiff contends that he had not been informed he was in custody and did not resist the officers (Court File No. 8, ¶ 8). Plaintiff also contends that when he was on the ground, four to six officers held him down and tased him repeatedly (*id.*).

Taking the factual allegations as true and making all inferences in favor of Plaintiff, the Court concludes Plaintiff has stated a claim that Jones used excessive force in subduing him. It is clearly established that using a Taser against a suspect who is not resisting arrest—whether or not the person had earlier resisted arrest—amounts to excessive force. In *Goodwin v. City of Painseville*, the Sixth Circuit noted that the 2008 case of *Landis v. Baker*, "provided notice that application of a Taser to a suspect who ceased virtually all resistance constitutes excessive force." *Goodwin v. City of Painesville*, 781 F.3d 314, 327 (6th Cir. 2015) (citing *Landis v. Baker*,

5

297 F. App'x 453, 463 (6th Cir. 2008)). Here, Plaintiff has alleged that the officers, including Jones, continued to tase him when he was not resisting and after he had been taken to the ground by four to six officers. Such factual allegations, if proven, would amount to the deprivation of a clearly established right. Accordingly, Jones is not entitled to qualified immunity at this stage.

Jones also claims that Plaintiff has failed to ascribe particular acts to Jones, and thus the claim should be dismissed. Although Jones is correct that "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right," *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir.2002)), it has been established since at least 1997 that "[a] police officer may be held liable for a failure to intervene during the application of excessive force when: '(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Goodwin*, 782 F.3d at 328 (quoting *Turner v. Scott*, 199 F.3d 425, 429 (6th Cir. 1997)). Thus, even though some of the actions are attributed to unnamed officers, Jones may still be liable for a failure to intervene even if he did not employ the Taser himself. If, as Plaintiff alleges, Jones was present on the porch while several officers jumped on top of Plaintiff, who was not resisting, and tased him repeatedly, Jones may be held liable for his failure to intervene. For the foregoing reasons, the Court will **DENY** Jones's motion to dismiss. Because Jones's motion for a protective order relies on these same arguments, the Court will **DENY** it as well.

B.  **Rule 15**

In its motion to dismiss (Court File No. 15), McMinn County argues that Plaintiff's claim is time barred because Plaintiff's amended complaint (Court File No. 8) naming it as a defendant was filed outside of the applicable statute of limitations. Federal courts apply the state statute of limitations for personal injury torts in proceedings brought under 42 U.S.C. § 1983. *Wallace v. Kato,* 594 U.S. 384, 387 (2007). In Tennessee, the statute of limitations period for personal injury torts is one year. Tenn. Code Ann. § 28-3-104. The instant case was filed on April 17, 2015, exactly one year after the original incident (Court File No. 1). The original Complaint named the McMinn County Sheriff's Department as defendant (*id*.). May 14, 2015, Plaintiff amended his Complaint to name McMinn County (Court File No. 8).

Federal Rule of Civil Procedure 15 allows an amended complaint to relate back to the original filing if, among other requirements, "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(c). To relate back, the amended complaint must assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the instant case, the Plaintiff originally named "McMinn County Sheriff" as a defendant and then later amended the complaint and replaced the Sheriff with the county government (*Compare* Court File No. 1 *with* Court File No. 8). The Sheriff's Department is a subsidiary entity of the McMinn County government. One would expect McMinn County would have known that an action could be brought against it in a case involving alleged misconduct by its sheriff's department. Furthermore, it is clear that Rule 15(c)(1)(B) applies since the amended complaint alleges the same conduct as the original filing (*Compare* Court File No. 1 *with* Court File No. 8). The Court

7

concludes that the amended complaint relates back to the original filing and thus the claim was timely filed.

    **C.    Municipal Liability**

A municipality cannot be held liable under a *respondeat superior* theory for § 1983 violations. *See Spears v. Ruth,* 589 F.3d 249, 256, n. 6 (6th Cir. 2009); *see also Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (stating that municipalities are not vicariously liable under § 1983 for the actions of their employees). Municipalities are liable when they "have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Cash v. Hamilton Cty. Dep't of Adult Prob.,* 388 F.3d 539, 542 (6th Cir. 2004). A § 1983 suit against a municipality ultimately involves a two-prong inquiry: (1) whether the plaintiff has been deprived of a constitutional right and (2) whether the municipality is responsible for this violation. *Id.*

A § 1983 plaintiff can draw from one of four sources to establish a municipality's liability for an illegal custom or policy: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears,* 589 F.3d at 256 (quoting *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.,* 238 F.3d 739, 743 (6th Cir. 2001). Failure to adequately train or manage officers can rise to the level of a de facto unconstitutional policy or custom if a plaintiff can show: "(1) the training or supervision was inadequate to the tasks performed: (2) the inadequacy was the result of the municipality's

8

deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). A municipality's failure to train its employees in a relevant aspect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 131 S. Ct. at 1359. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360.

The only allegation regarding whether McMinn County is responsible for the alleged harm to Plaintiff is the following:

> Plaintiff also maintains the [sic] McMinn County has not instituted a proper policy to be used in the event of being confronted by a person in the midst of a mental break from reality. Plaintiff maintains officers in the employment of the McMinn County Sheriff's Department have not been trained to handle a confrontation with persons in the midst of a mental break from reality.

(Court File No. 8, p. 3). These facts, if proven, are insufficient to state a claim for relief. Plaintiff has not alleged a pattern of constitutional violations by untrained employees sufficient to establish deliberate indifference. The Court will thus **GRANT** McMinn County's motion to dismiss (Court File No. 14).

Setting aside whether Defendant sued the proper entity or whether he identified a particular subordinate tortfeasor, the Town of Englewood's motion to dismiss will be granted for the same reason McMinn County's motion to dismiss will be granted. The only claim that could be construed as supporting municipal liability for the Town of Englewood is the allegation that the "Town of Englewood [is] liable for [its] failure to train [its] employees" (Court File No. 8, ¶ 16). As stated above, Plaintiff has not pointed to a pattern of constitutional violations necessary to proceed on a failure to train theory. The Court will thus **GRANT** the Town of Englewood's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Jones's motion to dismiss and his motion for a protective order (Court File Nos. 12, 16) and will **GRANT** the motions to dismiss filed by McMinn County and the Town of Englewood (Court File Nos. 14, 32).

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**